IN THE MATTER OF: JEANETTE RAY QUEVEDO AND MARILYN DAWN QUEVEDO

No. 9122DC442

(Filed 7 July 1992)

1. **Parent and Child § 1.5 (NCI3d) — termination of parental rights — sufficiency of petition**

   Allegations in a petition for termination of parental rights that respondent has neglected the child within the meaning of G.S. 7A-517(21) and that respondent has wilfully abandoned the child for at least six consecutive months immediately preceding the filing of the petition do not comply with the requirement of N.C.G.S. § 7A-289.25(6) that the petition state "facts which are sufficient to warrant a determination" that

IN RE QUEVEDO

[106 N.C. App. 574 (1992)]

grounds exist for termination, but the petition was sufficient to state a claim for termination where it incorporated an attached custody award which stated sufficient facts to warrant such a determination.

**Am Jur 2d, Parent and Child § 34.**

**Validity and application of statute allowing endangered child to be temporarily removed from parental custody. 38 ALR4th 756.**

2. **Parent and Child § 1.5 (NCI3d)— termination of parental rights—incarcerated respondent—absence from hearing—due process**

The due process rights of a respondent incarcerated in Massachusetts were not violated by the trial court's denial of respondent's motion that he be provided transportation to a termination of parental rights hearing and that the hearing not be conducted in his absence when the three factors specified in *Mathews v. Eldridge*, 424 U.S. 319, are considered and balanced. The factor of the private interests affected by the proceeding weighs heavily in favor of a parent's presence at the hearing; the factor of the countervailing governmental interest supporting the use of the challenged procedure weighs in favor of the State where defendant is imprisoned in a distant state on an armed robbery conviction for which he received a sentence of nine to fifteen years; and the risk of error due to respondent's absence from the hearing is slight where respondent contended that his presence was required at the hearing so that he could present evidence and aid in the cross-examination of witnesses, and respondent's affidavit was admitted into evidence and his appointed counsel cross-examined the witnesses at the hearing.

**Am Jur 2d, Parent and Child § 34.**

**Validity and application of statute allowing endangered child to be temporarily removed from parental custody. 38 ALR4th 756.**

3. **Parent and Child § 1.5 (NCI3d)— termination of parental rights—incarcerated respondent—funds for deposition**

When the respondent in a proceeding to terminate parental rights is incarcerated, it is the better practice for the

IN RE QUEVEDO

[106 N.C. App. 574 (1992)]

court, upon motion by the respondent, to provide the funds necessary for deposing the incarcerated respondent. This deposition, combined with respondent's representation by counsel at the hearing, will ordinarily provide sufficient participation by the incarcerated respondent so as to reduce the risk of error attributable to his or her absence to a level consistent with due process.

**Am Jur 2d, Parent and Child § 34.**

**Validity and application of statute allowing endangered child to be temporarily removed from parental custody. 38 ALR4th 756.**

4. **Parent and Child § 1.6 (NCI3d)— incarcerated father—termination of parental rights—sufficiency of findings**
    The trial court's conclusions that the incarcerated father has neglected and abandoned his children and that the best interests of the children require that his parental rights be terminated were supported by the court's findings, including findings that the children have been in the custody of petitioners for over six years, that respondent father has not seen the children during this time, including a period of more than a year before his incarceration, and that respondent only attempted to contact the children by mail after the termination petition was filed.

**Am Jur 2d, Parent and Child § 34.**

**Validity and application of statute allowing endangered child to be temporarily removed from parental custody. 38 ALR4th 756.**

5. **Parent and Child § 1.6 (NCI3d)— termination of parental rights—admission of guardian ad litem report—harmless error**
    A guardian ad litem report based upon hearsay statements was erroneously admitted in a parental rights termination proceeding, but this error was harmless where information contained in the report was properly before the court from another witness.

**Am Jur 2d, Parent and Child § 34.**

**Validity and application of statute allowing endangered child to be temporarily removed from parental custody. 38 ALR4th 756.**

**6. Evidence and Witnesses § 2542 (NCI4th) — child witness — competency to testify**

    The trial court did not err in finding that a ten-year-old child was competent to testify in a parental rights termination proceeding. Any inability she may have had to remember the events as they occurred with regard to respondent father went to the weight of her testimony, not to its admissibility or her competency.

**Am Jur 2d, Parent and Child § 34.**

**Validity and application of statute allowing endangered child to be temporarily removed from parental custody. 38 ALR4th 756.**

Judge GREENE concurring.

APPEAL by respondent Hector Quevedo from order entered 27 November 1990 by *Judge Samuel A. Cathey* in DAVIDSON County District Court. Heard in the Court of Appeals 10 March 1992.

Respondent appeals from the order terminating his parental rights in his two minor daughters. The original respondents in this action were Hector Quevedo and his wife, Debra. Debra has not appealed. The petitioners are the aunt and uncle of the two minor children.

On 12 January 1989, petitioners filed a petition to terminate the parental rights of both parents. Petitioners alleged that Hector had neglected the children and had wilfully abandoned the children for at least six consecutive months immediately preceding the filing of the petition. At the time of the hearing on 27 November 1990, Hector was serving a nine to fifteen year sentence in Massachusetts on an armed robbery conviction.

*Mills and Allen, by John A. Hauser, for respondent-appellant.*

*Snow & Skager, by Philip R. Skager, for petitioners-appellees.*

*Doris C. Gamblin for Guardian Ad-Litem.*

JOHNSON, Judge.

Appellant has failed to comply with Rule 28(b)(5) of the North Carolina Rules of Appellate Procedure. Nevertheless, in our discretion we will hear his appeal. N.C.R. App. Pro. 2.

I.

[1] Prior to trial, respondent filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure. N.C. Gen. Stat. § 1A-1, Rule 12(c) (1990). This motion was denied by the trial judge at the beginning of the hearing. On appeal, respondent contends that the trial court erred in failing to dismiss the petition. He argues that the petition contains insufficient facts to comply with N.C. Gen. Stat. § 7A-289.25(6), which requires that petitioners must state "facts which are sufficient to warrant a determination that one or more of the grounds for terminating parental rights exist." We disagree.

Although respondent styled his motion as one for judgment on the pleadings pursuant to Rule 12(c), we will treat it as a Rule 12(b)(6) motion for failure to state a claim because (1) the basis for the motion is that the petition fails to state sufficient facts as required by N.C. Gen. Stat. § 7A-289.25(6) and (2) a motion is treated according to its substance and not its label. *Harrell v. Whisenant*, 53 N.C. App. 615, 281 S.E.2d 453 (1981), *disc. review denied*, 304 N.C. 726, 288 S.E.2d 380 (1982); *Williams v. New Hanover County Bd. of Education*, 104 N.C. App. 425, 409 S.E.2d 753 (1991). A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Sutton v. Duke*, 277 N.C. 94, 176 S.E.2d 161 (1970). The question on a motion to dismiss is whether, as a matter of law, and taking the allegations in the complaint as true, the allegations are sufficient to state a claim upon which relief may be granted under any legal theory. *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 355 S.E.2d 838 (1987).

North Carolina General Statutes § 7A-289.25 (1989) requires that:

The petition [for termination of parental rights] shall . . . set forth such of the following facts as are known; and with respect to the facts which are unknown the petitioner shall so state:

(6) Facts which are sufficient to warrant a determination that one or more of the grounds for terminating parental rights exist.

Petitioners' verified petition for termination of parental rights contained the following allegations:

A. Said parent [Hector] has neglected the child within the meaning of G.S. 7A-517(21).

**IN RE QUEVEDO**

[106 N.C. App. 574 (1992)]

B. Said parent has wilfully abandoned the child for at least six (6) consecutive months immediately preceding the filing of this petition.

We agree with respondent that petitioners' bare recitation in paragraphs A and B of the alleged statutory *grounds* for termination does not comply with the requirement in N.C. Gen. Stat. § 7A-289.25(6) that the petition state *"facts* which are sufficient to warrant a determination" that grounds exist to warrant termination. However, the petition incorporates an attached custody award, dated 8 August 1988, and the custody award states sufficient facts to warrant such a determination. Therefore, this assignment is overruled.

II.

[2] Respondent next argues that his due process rights under the fifth and fourteenth amendments were violated. He contends that the trial court erred in proceeding with the hearing in his absence. Prior to the hearing, respondent timely filed a motion requesting that the court either provide for his transportation from the Massachusetts prison in which he was incarcerated or postpone the hearing until he could attend. This motion was denied. Respondent was permitted to submit affidavits for the court's consideration and he was represented by appointed counsel at the hearing. The issue is whether respondent's rights under the due process clause of the federal constitution were violated when his motion for transportation to the hearing was denied and the hearing to terminate his parental rights was allowed to proceed in his absence. We find that under the facts of this case respondent's due process rights were not violated.

This Court has recently stated the test to be applied when an incarcerated parent requests transportation to a termination hearing. In *In the Matter of Murphy*, 105 N.C. App. 651, 414 S.E.2d 396 (1992), this Court held that an incarcerated parent does not have an absolute right under the due process clause to be transported to a termination hearing but that the determination is one for the trial court to make, subject to review by the appellate courts, after balancing the three factors specified in *Mathews v. Eldridge*, 424 U.S. 319, 47 L.Ed.2d 18 (1976). Here, as in *Murphy*, "the record does not disclose whether the trial court balanced the *Eldridge* factors and made specific findings and conclusions regarding the minimum requirements of fundamental fairness." *Murphy*, 105 N.C.

App. at 654, 414 S.E.2d at 398. In accord with *Murphy*, we will not remand this case to the trial court for this finding but will decide today whether respondent had a due process right to be at the termination hearing. *Id.*

The *Eldridge* factors to be weighed in determining what procedure is due in a termination case, consistent with the requirements of due process are: (1) the private interests affected by the proceeding, (2) the risk of error created by the State's chosen procedure, and (3) the countervailing governmental interest supporting use of the challenged procedure. *Murphy*, 105 N.C. App. at 653, 414 S.E.2d at 398, citing *Santosky v. Kramer*, 455 U.S. 745, 71 L.Ed.2d 599 (1982). We now discuss the three *Eldridge* factors and apply them to the facts of this case.

The first factor, the private interests affected by the proceeding, clearly weighs in favor of a parent's presence at the hearing. As the Court recognized in *Santosky*, a parent's interest in his child is more precious than any property right. "A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is [ ] a commanding one." *Santosky*, 455 U.S. at 759, 71 L.Ed.2d at 610, quoting *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 68 L.Ed.2d 640 (1981). *Accord Murphy*, 105 N.C. App. 651, 414 S.E.2d 396. Grounded as it is in the very existence of the child-parent relationship, it is difficult to imagine any circumstances which would lessen or increase the weight to be afforded this factor in the balancing in which we are engaged. This factor weighs in favor of respondent's presence.

The third *Eldridge* factor, the countervailing governmental interest supporting the use of the challenged procedure, includes several components, one of which is not adverse to the parent's interest. The State has a *parens patriae* interest in the welfare of the child, thus the State shares the parent's interest in an accurate and just decision; this decision, of necessity, is based upon the facts found at the termination hearing. The State also has a fiscal and administrative interest in reducing the costs and burdens associated with these hearings. Further, the State has an interest in the physical security of convicted persons who are being transported.

Although the cost to the State of transporting an incarcerated parent might in certain circumstances be a consideration, normally it will not. The State routinely transports prisoners to be witnesses

in criminal trials, both within the state and from without. Given the paramount interest of the incarcerated parent in a termination case where he stands to lose forever any connection with his child, the weight to be given this cost factor should be no more than that taken into consideration when the State decides to transport a prisoner for its own benefit. The security component of the State's interest would require a consideration of the escape potential, thus the criminal record and the charge on which respondent was convicted, the length of the sentence remaining and the distance and method of transport would need to be taken into account.

In the case *sub judice*, the respondent was imprisoned in Massachusetts on an armed robbery conviction. He was serving a nine to fifteen year sentence which he began in October 1986. The record does not indicate respondent's expected release date in relation to the hearing date. Under the facts of this case, this factor would weigh in favor of the State and would tend to balance out the first factor.

The second *Eldridge* factor, the risk of error created by the State's chosen procedure, attempts, in the context of a termination case, to measure the risk that an incarcerated parent's rights will be terminated where, if he were present at the hearing, a different result would obtain. Thus the type of evidence which the respondent wishes to present and whether that evidence can be sufficiently presented by counsel or by other means is determinative. *Murphy* is of no assistance in this regard. In *Murphy*, the incarcerated respondent's only stated reason for being present was so that he could contest the sexual assault convictions for which he was incarcerated. His counsel could offer no viable argument as to any risk of error caused by the respondent's absence. The trial court held that these convictions were *res judicata* and denied his request for transportation. This Court found that there was no indication in the record of any risk of error and affirmed. The proper resolution of this issue in the case *sub judice* is more difficult.

Respondent argues here as he did before the trial judge that his presence was required at the hearing so that he could present evidence and aid in the cross-examination of witnesses. The record reflects that after respondent's motion for transportation to the hearing was denied, his counsel moved the court for funds to transport him to Massachusetts for the purpose of taking his client's deposition. This motion was also denied. The court did allow re-

spondent to submit an affidavit. In his affidavit, respondent states that he has not spoken to nor seen his daughters since May 1984. He explains that this happened when his wife left with the children without telling him where the children were but that he thought they were all right. He was then imprisoned after being convicted of crimes he never would have committed had he been with his wife. He states that he made numerous attempts to write to the children, the last five times by certified mail. He states that he sent money but the checks were not cashed. Respondent's affidavit was admitted into evidence and his appointed counsel cross-examined the witnesses at the hearing.

We find that under the facts of this case, the risk of error due to respondent's absence from the hearing was slight.

Balancing all three *Eldridge* factors, we find that respondent's due process rights were not violated by the court's denial of his request for transportation.

[3]   We note that the use of depositions is allowed in civil cases where a witness is unable to attend because of age, illness, infirmity or imprisonment. N.C. Gen. Stat. § 1A-1, Rule 32(4). Therefore, when an incarcerated parent is denied transportation to the hearing in contested termination cases, the better practice is for the court, when so moved, to provide the funds necessary for the deposing of the incarcerated parent. The parent's deposition, combined with representation by counsel at the hearing, will ordinarily provide sufficient participation by the incarcerated parent so as to reduce the risk of error attributable to his absence to a level consistent with due process.

### III. and IV.

[4]   Respondent next contends that the court erred in concluding that he had neglected and abandoned the children.

Under N.C. Gen. Stat. § 7A-289.32(2) the court may terminate parental rights upon a finding that the parent has "neglected [the] child within the meaning of G.S. § 7A-517(21)." A neglected child is one who "does not receive proper care, supervision, or discipline from his parent [ ] or who has been abandoned[.]" A separate ground for terminating parental rights is that "the parent has willfully abandoned the child for at least six consecutive months immediately preceding the filing of the petition." N.C. Gen. Stat. § 7A-289.32(8).

At the hearing, the judge found the following pertinent facts, to which respondent does not except:

5. Both minor children have been in the actual physical custody of [ ] Petitioners since September 21, 1984.

9. Petitioner Peggy J. Taylor is forty-four (44) years old, has lived at the same address for the last fourteen (14) years, and has been a resident of Davidson County, North Carolina, for thirty-five (35) years. Respondent[ ] Hector Quevedo [has] been aware of said Petitioner's address. Said Petitioner is not employed outside of the home.

10. Petitioners received physical custody of both of the minor children on September 21, 1984. On September 24, 1984, Deborah Quevedo and Peggy J. Taylor went to an attorney's office in Davidson County and signed a notarized agreement awarding custody of the two minor children to Peggy J. Taylor.

11. Said minor children have lived continuously with Petitioners since September 21, 1984, and are presently residing with them.

13. Said minor children have not seen their natural father, Hector Quevedo, since several months prior to September 21, 1984, which period of time is more than one (1) year in duration even prior to said Respondent's incarceration on October 24, 1986, in the State of Massachusetts.

14. Hector Quevedo abandoned said minor children prior to his incarceration and has also neglected said juveniles both prior to and subsequent to his incarceration in that he has not provided either of the children with the proper care, supervision, or discipline expected of a parent.

15. Hector Quevedo [has] not seen said minor children from the years 1984 through the date of the hearing[.] Prior to the filing of the Petition of Termination of Parental Rights, Hector [has not] provided any cards, gifts, letters, telephone calls or child support payments since the time that said children have been in Petitioner's custody.

16. After the Petition to Terminate Parental Rights was filed, Hector Quevedo made three attempts to communicate in writing with the minor children, but after the first letter was read to the children, they exhibited a severe emotional reaction to such a letter, including signs of post traumatic stress disorder,

that Petitioners refused to receive two subsequent mailings from Hector Quevedo, presumably which letters were for the minor children.

18. Hector Quevedo, immediately prior to the date of this hearing and for the last period of over six (6) years, ha[s] shown a complete failure to provide for the personal contact, love, and affection that is part of a normal parent-child relationship.

19. Hector Quevedo ha[s] not provided any care, supervision, discipline or love and affection for said children for more that one (1) year prior to the hearing.

Based on these findings, the court concluded that Hector had abandoned and neglected the children and that it was in their best interests that Hector's parental rights be terminated.

Respondent does not object to the findings of facts as found by the trial judge. They are therefore binding on this Court on appeal. The question is whether the findings of fact support the conclusion that respondent has neglected and abandoned the children. We find that they do.

V.

[5] Respondent next contends that it was error for the court to admit the guardian ad litem report into evidence at the adjudicatory hearing because the report and its conclusions were based upon hearsay statements.

The guardian did not testify at trial. The report was admitted into evidence over the objection of the respondent. Respondent did not examine the guardian although she was available at the hearing.

We find that the admission of the report, although error, was harmless. The report does not contain any information which was not properly before the court from another witness.

VI.

[6] Respondent next contends that the court erred in allowing the older of the two children, then 10 years old, to testify in that her testimony was incompetent and highly prejudicial. We disagree.

The trial judge and the attorneys questioned the witness as to her recognition of the importance of telling the truth and the

**IN RE QUEVEDO**

[106 N.C. App. 574 (1992)]

judge held that she was competent to testify. Any inability she may have had to remember the events as they occurred with regard to her father goes to the weight of her testimony, not to its admissibility or her competency. This argument has no merit.

## VII.

Finally, respondent contends that the court erred in entering the termination order without making sufficient findings of fact to support the order. Respondent makes no argument and cites no authority. This assignment of error is deemed abandoned. Rule 28(b)(5), North Carolina Rules of Appellate Procedure.

Affirmed.

Judge COZORT concurs.

Judge GREENE concurs with separate opinion.

Judge GREENE concurring.

I fully concur with the majority and write separately only to emphasize the appropriateness of the court's use of the Rules of Civil Procedure in the context of the Termination of Parental Rights Act, Chapter 7A, Article 24B of the General Statutes (Act).

Unless the provisions of the Act explicitly or implicitly provide otherwise, the Rules of Civil Procedure apply to termination of parental rights cases. N.C.G.S. § 7A-193 (1989) (unless otherwise provided, Rules of Civil Procedure apply "in the district court division of the General Court of Justice"); *In re Moore*, 306 N.C. 394, 400, 293 S.E.2d 127, 130-31 (1982) (applying N.C.G.S. § 1A-1, Rule 58 to determine time of entry of order in termination of parental rights case), *appeal dismissed*, 459 U.S. 1139, 74 L.Ed.2d 987 (1983); *In re Clark*, 303 N.C. 592, 598 n.3, 281 S.E.2d 47, 52 n.3 (1981) (proceedings to terminate parental rights are either civil actions or special proceedings, both of which are governed by the Rules of Civil Procedure unless a different procedure is prescribed by statute); *In re Manus*, 82 N.C. App. 340, 344, 346 S.E.2d 289, 292 (1986) (applying N.C.G.S. § 1A-1, Rule 17(a) in determining that respondent was not entitled to dismissal of petition because of alleged erroneous designation of petitioner); *In re Allen*, 58 N.C. App. 322, 329-30, 293 S.E.2d 607, 612 (1982) (analyzing trial court's

entry of written order under N.C.G.S. § 1A-1, Rule 58); *In re Peirce*, 53 N.C. App. 373, 388-89, 281 S.E.2d 198, 207-08 (1981) (analyzing validity of trial court's amendment to its judgment terminating parental rights under N.C.G.S. § 1A-1, Rule 60(a)).

The Act implicitly prohibits judgments on the pleadings, default judgments, and summary judgments. This is so because N.C.G.S. § 7A-289.28 (1989) requires the trial court to conduct a hearing on the petition to terminate the respondent's parental rights, *In re Tyner*, 106 N.C. App. 480, 483, 417 S.E.2d 260, 261 (1992), thus precluding the use of Rule 12(c) (judgment on the pleadings), Rule 55 (default judgment) and Rule 56 (summary judgment). The Act also implicitly prohibits counterclaims by respondents. *Peirce*, 53 N.C. App. at 380, 281 S.E.2d at 203. Other provisions of the Rules of Civil Procedure including Rule 12(b)(6), however, apply to the Act.