IN THE MATTER OF: M.C., A.W., A.W., M.C., G.W.
No. COA07-746
Court of Appeals of North Carolina.
Filed November 6, 2007
This case not for publication
Dean W. Hollandsworth for petitioner-appellee.
Mary McCullers Reece for respondent-appellant.
North Carolina Guardian ad Litem Program, by Pamela Newell Williams, for guardian ad litem-appellee.
GEER, Judge.
Respondent mother appeals from an order terminating her parental rights to five children on the grounds of neglect, dependency, abandonment, and lack of reasonable progress in correcting the conditions that led to the removal of the children from her custody. Although the trial court found that respondent loves her children and cares deeply about their welfare, it is undisputed that respondent, who resides in an assisted living facility, cannot currently care for her children because of severe physical limitations resulting from a gunshot wound sustained during a drug deal two years ago. We hold that the trial court's determination that this incapacity will continue for the foreseeable future is supported by the evidence despite respondent's understandable optimism that some day she may improve sufficiently to care for her children. We, therefore, affirm the trial court's order to the extent that it concludes that grounds exist for termination of parental rights under N.C. Gen. Stat. § 7B-1111(a)(6) (2005). We must, however, set aside the dispositional portion of the order and remand for further findings of fact because the trial court failed to make the findings required under N.C. Gen. Stat. § 7B-1110(a) (2005).

Facts
Four of the five children involved in this case have been in the custody of the New Hanover County Department of Social Services ("DSS") since July 2003. The fifth child has been in DSS custody since his birth in September 2005. The four eldest children were adjudicated to be neglected and dependent on 11 September 2003. That order required respondent to obtain stable housing and employment, obtain a mental health assessment and follow any recommendations, complete an approved parenting program, and provide random drug/alcohol screens.
On 27 May 2004, one of the children was placed with respondent on a trial basis. While the child was with her, respondent took him off his medication and did not consistently transport him to therapy appointments. DSS was authorized to remove the child upon further non-compliance. On 4 August 2004, however, the child was returned to foster care after respondent was incarcerated for failure to appear on a charge of non-payment of child support. Respondent did not notify DSS of the incarceration, but rather had her aunt and uncle care for the child, even though DSS had previously determined that placement with the uncle was inappropriate because he had engaged in incest with respondent's sister.
On 10 September 2004, respondent was evicted for non-payment of rent. She did not subsequently maintain stable housing and worked only sporadically. In November and December 2004, respondent met with a therapist four times, during which sessions she blamed the loss of her children on DSS. She provided one diluted drug screen and failed to undergo a second drug screen, claiming that she had forgotten about it. Respondent did complete the required parenting program.
On 5 March 2005, while respondent was pregnant with her youngest child, she was participating in a drug deal in a motel room in Greensboro when she was shot in the head and left for dead. Respondent remained in a coma for two months and now has vision problems, is unable to write or dress herself, and can only walk a few steps unassisted. She is transported by other people in a wheelchair. At the time of the termination of parental rights hearing, respondent resided in an assisted living facility. The five children now range in age from two years old to 11 years old.
In June 2006, DSS filed a petition to terminate respondent's parental rights as to three of the children: M.A.C., A.W., and A.I.W. In August 2006, a second petition was filed as to M.C. and G.W., which was followed by an amended petition a few days later correcting the identity of the father of M.C. Respondent filed answers to both of the petitions and filed a separate motion to dismiss the M.C. and G.W. petition for failure to state a claim for relief under Rule 12(b)(6) of the Rules of Civil Procedure.
In an order dated 29 January 2007, the trial court terminated the parental rights of each of the fathers of the children, but continued the hearing as to respondent. The court subsequently conducted a hearing addressing respondent's parental rights on 19 March 2007. On 16 April 2007, the trial court entered an order concluding that the following grounds existed to terminate respondent's parental rights: (1) respondent had neglected the children; (2) respondent was incapable of providing proper care and supervision to the minors such that they are dependent; (3) respondent willfully left the children in foster care for more than 12 months without making reasonable progress in correcting the conditions that led to removal of the children; and (4) respondent willfully abandoned the children for at least six months immediately preceding the petition by engaging in activity reasonably foreseeable to result in incarceration or injury. The court further determined that termination of parental rights was in the children's best interests. Respondent timely appealed from this order.

Discussion
Respondent first contends the trial court lacked subject matter jurisdiction because the petitions failed to set forth sufficient facts to establish the existence of grounds to terminate parental rights in violation of N.C. Gen. Stat. § 7B-1104(6) (2005). In support of this argument, respondent cites In re Quevedo, 106 N.C. App. 574, 419 S.E.2d 158 (1992), and In re Hardesty, 150 N.C. App. 380, 563 S.E.2d 79 (2002).
In Quevedo, this Court confirmed that the question whether a petition states "[f]acts that are sufficient to warrant a determination that one or more of the grounds for terminating parental rights exist," as required by N.C. Gen. Stat. § 7B-1104(6), constitutes a contention that the petition fails to state a claim for relief under Rule 12(b)(6) of the Rules of Civil Procedure. Quevedo, 106 N.C. App. at 578, 419 S.E.2d at 159 (construing N.C. Gen. Stat. § 7A-289.25(6) (1989), the identically-worded predecessor statute). Recently, this Court has specifically held: "The Rules of Civil Procedure apply to proceedings for termination of parental rights, and a Rule 12(b)(6) motion may not be made for the first time on appeal." In re H.L.A.D., __ N.C. App. __, __, 646 S.E.2d 425, 434 (2007) (internal quotation marks and citation omitted). Thus, if a parent fails to file a Rule 12(b)(6) motion in the trial court, then the issue of the sufficiency of the petition's allegations has not been properly preserved for appellate review. Id.
In this case, respondent did not move to dismiss the petition filed with respect to M.A.C., A.W., and A.I.W. Respondent may not, therefore, contend for the first time on appeal that the allegations of that petition were insufficient. Although respondent did move to dismiss the M.C. and G.W. petition, we hold that the petition is sufficient.
We agree with respondent that the petition primarily parrots the statutory grounds. Nevertheless, it also attaches and incorporates by reference the adjudicatory orders for all the children, including the recent order for G.W. These orders supply sufficient facts to comply with N.C. Gen. Stat. § 7B-1104(6). See Quevedo, 106 N.C. App. at 579, 419 S.E.2d at 160 (holding that trial court properly did not dismiss petition, although it recited only statutory grounds, when petition incorporated by reference custody order reciting sufficient facts). We note, however, that the preferred practice would be to allege the pertinent facts in the petition.
Respondent next challenges each of the grounds for termination found by the trial court. Under the North Carolina Juvenile Code, a termination of parental rights proceeding involves two distinct phases: an adjudicatory stage and a dispositional stage. In re Fletcher, 148 N.C. App. 228, 233, 558 S.E.2d 498, 501 (2002). "First, in the adjudicatory stage, the trial court must determine whether the evidence clearly and convincingly establishes at least one ground for the termination of parental rights listed in N.C. Gen. Stat. § 7B-1111." Id. After the petitioner has proven at least one ground for termination, "the trial court proceeds to the dispositional phase and must consider whether termination is in the best interests of the child." In re Shermer, 156 N.C. App. 281, 285, 576 S.E.2d 403, 406 (2003); see also N.C. Gen. Stat. §7B-1110(a) ("[T]he court shall determine whether terminating the parent's rights is in the juvenile's best interest.").
In this case, we hold that the trial court properly concluded that the ground of dependency, N.C. Gen. Stat. § 7B-1111(a)(6), existed. "Having concluded that at least one ground for termination of parental rights existed, we need not address the additional ground[s] . . . found by the trial court." In re B.S.D.S., 163 N.C. App. 540, 546, 594 S.E.2d 89, 93-94 (2004).
N.C. Gen. Stat. § 7B-1111(a)(6) provides:
That the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.
N.C. Gen. Stat. § 7B-101(9) (2005) in turn defines "dependent juvenile" as:
A juvenile in need of assistance or placement because the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or whose parent, guardian, or custodian is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement.
In this case, the trial court found that four of the children had, prior to respondent's gunshot wound, been adjudicated dependent. Thus, respondent's inability to provide care or supervision for the children predated her current condition. With respect to G.W., the court found that he had been found to be dependent because respondent's "hospital stay and rehabilitation [following the gunshot wound] left her physically unable to parent said child." The court further found with respect to respondent's current condition: "Respondent . . . resides in an assisted living home in New Hanover County. She has vision problems, is unable to write or dress herself and can take only a few steps unassisted. Other than that she must be transported by others in a wheelchair. She is unable to care for her minor children."
Respondent does not argue that these findings are unsupported by evidence, but rather contends that DSS failed to prove this ground because it did not present medical evidence regarding respondent's prognosis for recovering sufficiently to take care of her children. Respondent relies exclusively on In re Scott, 95 N.C. App. 760, 383 S.E.2d 690, disc. review denied, 325 N.C. 708, 388 S.E.2d 459 (1989).
In Scott, the trial court had terminated the parental rights of the respondent, who suffered from a personality disorder, based on the ground of dependency. This Court reversed for lack of clear, cogent, and convincing evidence to support that ground. Id. at 764, 383 S.E.2d at 692. The only evidence offered by the petitioner to show that the respondent was mentally incapable of caring for her children was the testimony of her treating psychiatrist. Id. at 763, 383 S.E.2d at 691. That psychiatrist had, however, testified both generally that a personality disorder does not necessarily render a person incapable of raising children and specifically that the respondent's pattern of behavior did not mean that she was incapable of caring for her children. Id. Further, the psychiatrist could not predict within a reasonable probability that respondent's mental illness would continue throughout the minority of the children, especially given that the respondent was then experiencing her longest sustained period of improvement. Id.
Contrary to respondent's contention, nothing in Scott mandates that expert testimony is required in all cases prior to a determination of dependency or a finding that the parent's incapability will continue for the foreseeable future. While in some cases, such as Scott, such evidence might be necessary, this case does not fall in that category. Respondent's incapability, as found by the trial court, is the result of substantial physical limitations, including her lack of independent mobility and need for other people to transport her in a wheelchair and even dress her. Her profound limitations were apparent by observation in the courtroom and through her testimony and that of the DSS social worker. Indeed, the physical limitations were essentially undisputed, and no medical testimony was necessary to establish them.
Respondent does not contend in her brief that she is currently able to provide care and supervision to her children given her existing physical limitations. Instead, she points to her own testimony "that she was improving and that she believed that she would be able to raise her children if given the chance." She then argues that "there was certainly no way for the trial court to evaluate her prognosis for the future without hearing medical testimony." The issue, however, is not whether respondent will be able, at some point during the children's minority, to provide the necessary care and supervision of her children. The trial court was required to decide only whether respondent's incapability to parent "will continue for the foreseeable future."[1]
The trial court could reasonably consider the very limited progress respondent had made over the two years since the gunshot wound, her current condition, and how far she still had to go to be able to function as a parent. While medical evidence might have been helpful, the trial court's actual observations of respondent and the testimony were a sufficient basis for the court's determination that respondent's incapability would continue for the foreseeable future.[2]
Respondent argues additionally that the trial court erred in concluding that the children were dependent because "an appropriate alternative child care arrangement" existed. Respondent points to the fact that respondent, in her testimony, identified her "AuntLinda" as someone who would help her if respondent regained custody of her children. The DSS social worker, however, testified that although she had heard of "Aunt Linda," she had never been able to obtain any information about her from interviews with other family members.
In addition, other evidence indicated that no appropriate alternative child care arrangement was available. The trial court found that when respondent became aware, in the summer of 2004, that she was going to be incarcerated, respondent placed her son M.C. with another aunt and uncle, even though DSS had previously decided that such placement was inappropriate because the uncle had committed incest with respondent's sister. This action of respondent suggests a lack of other appropriate alternatives. Further, the court also took judicial notice of all prior orders in the children's cases, which included the relatively recent adjudication for G.W. in February 2006, in which the court found that "[t]here is no appropriate family placement for the Juvenile."
Respondent's vague reference in her testimony to an "Aunt Linda" as a source of help (and not as a possible alternative child care arrangement) did not preclude the trial court's conclusion that the children were dependent under N.C. Gen. Stat. § 7B-1111(a)(6), especially in light of the consistent determinations throughout the proceedings involving the children that no appropriate family placement existed for the children. Accordingly, we hold that the trial court properly found that grounds existed to terminate respondent's parental rights. Finally, respondent contends that the trial court erred in concluding that termination of her parental rights is in the best interests of the children because the court failed to comply with N.C. Gen. Stat. § 7B-1110(a). That statute provides:
(a) After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest. In making this determination, the court shall consider the following:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
(Emphasis added.) This statute is the result of amendments applicable to petitions filed on or after 1 October 2005. 2005 N.C. Sess. Laws 398 § 17.
We agree with respondent that the trial court did not fully comply with § 7B-1110(a). The court made findings of fact regarding the age of each child and found that three of the children "are in pre-adoptive foster homes." As to the two remaining children, however, the court simply found that they were"in therapeutic placement due to their aggressive nature," with no finding as to the likelihood of adoption. The court indicated consideration of the third factor by specifying that termination of parental rights was necessary "so that the children can be afforded an opportunity for adoption and permanence." While the court found that respondent "loves her children and is deeply concerned for their welfare," it made no findings regarding the nature of the children's bond with their mother as required by § 7B-1110(a)(4). Finally, as to § 7B-1110(a)(5), the order contains no findings regarding "[t]he quality of the relationship between the juvenile and the proposed adoptive parent," even with respect to the three children in pre-adoptive foster homes.
Thus, the trial court failed to fully comply with § 7B-1110(a). We must, therefore, set aside the dispositional part of the order and remand for further findings of fact. We leave to the discretion of the trial court whether to hear additional evidence regarding the dispositional factors.
Affirmed in part; remanded in part.
Judges CALABRIA and STEPHENS concur.
Report per Rule 30(e).
NOTES
[1] Although Scott focused on capability being restored during the children's minority, that opinion predates the adoption of our current Juvenile Code with its emphasis on ensuring "the juvenile will be placed in a safe, permanent home within a reasonable amount of time." N.C. Gen. Stat. § 7B-100(5) (2005).
[2] We note that both DSS and the guardian ad litem quote from the trial court's oral statement of its findings at the hearing. Those oral findings cannot, however, be a basis for upholding the written order's conclusions of law if they are not also included among the order's findings of fact. It is the written order that is the subject of the appeal and not any oral rendering of that order.