Speedway Motorsports Int'l Ltd. v. Bronwen Energy Trading, Ltd., 2014 NCBC 5.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
08 CVS 9450

SPEEDWAY MOTORSPORTS
INTERNATIONAL LTD.,

      Plaintiff,

      v.

BRONWEN ENERGY TRADING, LTD.,
BRONWEN ENERGY TRADING UK, LTD.,
DR. PATRICK DENYEFA NDIOMU, AND
BNP PARIBAS S.A.,

      Defendants.

ORDER AND OPINION

*Parker Poe Adams & Bernstein LLP by Michael G. Adams, Lori Keeton, Jami Farris, and William Esser for Plaintiff.*

*Bell Davis & Pitt P.A. by Edward B. Davis, Kevin G. Williams, and William K. Davis for Defendant BNP Paribas S.A.*

Murphy, Judge.

**THIS MATTER** is before the Court on Defendant BNP Paribas S.A.'s ("France") Motion for Judgment on the Pleadings, pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure (the "Motion"). After considering the parties' briefs and arguments of counsel at the hearing on October 17, 2012, the Court **DENIES** the Motion.

I.

PROCEDURAL BACKGROUND

{1} Plaintiff, Speedway Motorsports International Ltd. ("Plaintiff"), filed its Complaint on April 22, 2008 and its Second Amended Complaint ("SAC") on September 25, 2008. France filed its Answer on July 2, 2012.

{2} Former-defendant, BNP Paribas (Suisse) S.A. ("Suisse"), filed a motion to dismiss for lack of personal jurisdiction on August 4, 2008. Shortly thereafter, on

August 18, 2008, France filed its motion to dismiss pursuant to Rules 12(b)(3) and 12(b)(6) of the North Carolina Rules of Civil Procedure. France filed a subsequent amendment of its motion on September 30, 2008.

{3} The Honorable Albert Diaz entered an Order on January 21, 2009, granting in part and denying in part France's motion to dismiss. Judge Diaz also entered an Order on July 14, 2009, denying Suisse's motion to dismiss. France filed notice of appeal from Judge Diaz's order on February 10, 2009, and Suisse entered notice of appeal on August 11, 2009.

{4} The North Carolina Court of Appeals published separate, companion opinions on February 15, 2011, affirming the Trial Court's Order as to France and reversing the Trial Court's Order as to Suisse. Thereafter, Suisse was dismissed as a party by Court Order on June 6, 2012.

{5} Subsequently, France filed the current Motion on July 27, 2012. Plaintiff filed its Response on August 20, 2012 and France filed its Reply in Support of the Motion on September 4, 2012.

{6} The Court held a hearing on the Motion on October 17, 2012.

II.

FACTUAL BACKGROUND

{7} On a motion for judgment on the pleadings, the Court does not make findings of fact, but may summarize the facts in the pleadings with all reasonable inferences to the non-moving party. *Erickson v. Starling*, 235 N.C. 643, 657, 71 S.E.2d 384, 394 (1952); *Tong v. Dunn*, 2012 NCBC 29 ¶ 12 (May 18, 2012), http://www.ncbusinesscourt.net/opinions/2012_NCBC_29.pdf (dismissing one plaintiff's claim through application of *res judicata*), *rev'd on other grounds*, 2013 N.C. App. LEXIS 1303 (N.C. Ct. App., Dec. 17, 2013).

{8} Plaintiff is incorporated in the British Virgin Islands, but maintains an office in Charlotte, North Carolina. (SAC ¶ 2). Plaintiff's business includes conducting petroleum products transactions. (SAC ¶ 15).

{9}   France is based in Paris, France and operates an international bank through subsidiaries, some of which are registered in North Carolina. (SAC ¶ 7). Suisse is a bank based in Geneva, Switzerland.  (SAC ¶ 6).

{10}   In early 2007, former defendants Swift Aviation Group, Inc., Swift Air, LLC, Swift Aviation Group, LLC, and Swift Transportation Co., Inc. (collectively, "Swift") sought to enter into a long-term contract with Kuwait Petroleum Corporation ("KPC") for the purchase of petroleum products.  (SAC ¶¶ 19–22).  KPC was unwilling to enter into a long-term arrangement with Swift until Swift could demonstrate its ability to perform shorter-term "spot" contracts.  (SAC ¶ 23).

{11}   Swift contacted France and, upon the recommendation of France, partnered with Defendant Bronwen Energy Trading, Ltd. ("Bronwen") to assist Swift in executing the spot contracts.  In June 2007, Swift and Bronwen sought Plaintiff's help in obtaining letters of credit for the spot contracts.  (SAC ¶¶ 25, 35). Plaintiff and Bronwen entered into three separate oil contracts wherein Plaintiff agreed to guarantee letters of credit that France issued to Bronwen to effectuate the purchase of various shipments of certain fuels.  (SAC ¶¶ 39–54).

{12}   To secure its obligations under the oil contracts, Plaintiff maintained an account with Suisse that held at least $12,000,000.00.  Plaintiff instructed Suisse to issue a fourth guarantee[1] directly to France which was secured by Plaintiff's account with Suisse. (SAC ¶¶ 57–60; Pl.'s Resp. Mot. 6; Def.'s Br. Supp. Mot. 3). The fourth guarantee from Suisse to France contained forum selection and choice of law provisions subjecting the guarantee to Swiss law and naming Geneva as the place of jurisdiction.  (SAC Ex. 5).

{13}   France issued several letters of credit to facilitate the parties' performance pursuant to the terms of the oil contracts.  (SAC ¶ 64).  In November 2007, France sent an email to Bronwen, Swift, and Plaintiff detailing losses amounting to more than $17,000,000.00 allegedly related to the oil contracts and expressing France's

---

[1] Suisse issued a total of four guarantees to France, each in relation to the oil contracts between Plaintiff and Bronwen.  However, the fourth and final guarantee superseded each of the previous guarantees, applies to all of the oil contracts, and is the only operative guarantee in this case.  (SAC ¶¶ 46, 49, 55, 57).

belief that Plaintiff's account with Suisse was available to cover up to $12,000,000.00 of the losses. (SAC ¶ 67).

{14} Despite Plaintiff's protest, France insisted it was entitled to draw on the fourth guarantee to cover the losses and made demand on Suisse for payment from Plaintiff's funds on account with Suisse. (SAC ¶ 69). Suisse notified Plaintiff on November 7, 2007 that it had received France's demand for payment. (SAC ¶ 71). Although Plaintiff objected, Suisse paid France $12,000,000.00 from Plaintiff's account on November 9, 2007. (SAC ¶¶ 72–73). Thereafter, Plaintiff filed suit against France, seeking damages for breach of demand guarantee, conversion, fraud, negligent misrepresentation, and unfair and deceptive practices. Included in the same suit were separate claims involving other defendants. (SAC ¶¶ 105–77). Plaintiff also seeks an accounting and equitable subrogation to France's claims against other defendants. (SAC ¶¶ 157–66; 178–80).

{15} France filed a motion to dismiss, arguing that Plaintiff failed to state a claim against it and that the case had to be litigated in Geneva, Switzerland based on the identical forum selection clauses contained in both the "guarantee" between Plaintiff and Suisse and the guarantee between Suisse and France. (Def.'s Reply Supp. Mot. Dismiss 3–7). This Court granted the motion in part, determining that Plaintiff had failed to allege the existence of a contract between the parties, but denied the motion as to Plaintiff's other claims and France's position regarding forum selection. France appealed the Court's ruling regarding forum selection.

{16} On appeal, the North Carolina Court of Appeals held that the "independence principle" applicable to letters of credit transactions foreclosed France from availing itself of the forum selection clause contained in the contract between Plaintiff and Suisse. *Speedway Motorsports Int'l Ltd. v. Bronwen Energy Trading, Ltd.* (*Speedway I*), 209 N.C. App. 564, 575, 706 S.E.2d 262, 270 (2011). In a companion opinion, the Court of Appeals also held that this Court did not have personal jurisdiction over Suisse. *Speedway Motorsports Int'l Ltd. v. Bronwen Energy Trading, Ltd.* (*Speedway II*), 209 N.C. App. 474, 491, 707 S.E.2d 385, 396 (2011). As a result of that opinion, this Court dismissed Suisse on June 6, 2012.

*Speedway Motorsports Int'l Ltd., v. Bronwen Energy Trading, Ltd.*, No. 08 CVS 9450 (N.C. Super. Ct. June 6, 2012) (dismissing Suisse from Plaintiff's suit).

{17}   France filed the Motion currently before the Court on July 27, 2012, seeking judgment on the pleadings and dismissal of all of Plaintiff's claims against it.  In support of the Motion, France argues only that the independence principle eviscerates all of Plaintiff's claims and it is, therefore, entitled to judgment as a matter of law.  (Def.'s Br. Supp. Mot. 1–9).

III.

LEGAL STANDARD

{18}   The movant in a motion for judgment on the pleadings must establish that there is no material issue of fact left to be resolved and that he is entitled to judgment as a matter of law.  *American Bank & Trust Co. v. Elzey*, 26 N.C. App. 29, 32, 214 S.E.2d 800, 802 (1975) (citations omitted).  Plaintiff's pleading will be liberally construed.  *Huss v. Huss*, 31 N.C. App. 463, 466, 230 S.E.2d 159, 162 (1976) (citation omitted).

IV.

ANALYSIS

1.

A RULE 12(c) MOTION IS PROPER IN THIS CASE

{19}   As a preliminary matter, Plaintiff contends that the Motion under Rule 12(c) is inappropriate because its substance is identical to the substance of its previous Rule 12(b)(6) motion decided by the Court on January 21, 2009.  (Pl.'s Resp. Mot. 2–4).  Plaintiff argues that under *In re Quevedo*, 106 N.C. App. 574, 578, 419 S.E.2d 158, 159 (1992), "when, as here, a Rule 12(c) motion simply challenges the legal validity of the claims it should be treated as a Rule 12(b)(6) motion."  (Pl.'s Resp. Mot. 3).  Plaintiff asserts that Judge Diaz previously reviewed the legal sufficiency of the SAC and was aware of the independence principle since it was argued in Plaintiff's brief in opposition to Suisse's motion to dismiss that was submitted to the Court before France filed its motion to dismiss.  (Pl.'s Resp. Mot. 4).

{20}    In North Carolina, a Rule 12(b)(6) motion does not foreclose a Rule 12(c) motion. *See Cash v. State Farm*, 137 N.C. App. 192, 201–02, 528 S.E.2d 372, 378 (2000).  Furthermore,

> [i]t is plainly evident under our Rules of Civil Procedure that because a plaintiff has survived a 12(b)(6) motion, and thus has alleged a claim for which relief may be granted, his survival in the action is not the equivalent of the court determining that conflicting issues of fact exist and no party is entitled to judgment as a matter of law under Rule 12(c).

*Id.* at 202, 528 S.E.2d at 378.  Therefore, the Court concludes that it may decide the Motion.

2.

PLAINTIFF HAS PLEADED EQUITABLE SUBROGATION TO SUISSE'S RIGHTS AGAINST FRANCE FOR FRAUD AND NEGLIGENT MISREPRESENTATION

{21}    France asserts that Plaintiff did not plead equitable subrogation to Suisse's rights against France in the SAC, (Def.'s Reply Supp. Mot. 9), and that even if Plaintiff "had alleged such a cause of action and were to become equitably subrogated to Suisse's rights against France, Plaintiff would step into Suisse's shoes, subject to the rights and defenses arising out of the Suisse/France Guaranty." (Def.'s Reply Supp. Mot. 9).  Specifically, France contends that Plaintiff would be bound by the Swiss forum selection and choice of law clauses contained in the Suisse/France Guarantee.  (Def.'s Reply Supp. Mot. 10–11).

{22}    Plaintiff alleged equitable subrogation in its fraud and negligent misrepresentation claims.  (SAC ¶¶ 143, 154).  Furthermore, Plaintiff's equitable subrogation to Suisse's fraud and negligent misrepresentation claims was considered at the motion to dismiss before Judge Diaz.  In that motion, Plaintiff argued that it was equitably subrogated to Suisse's rights against France for fraud and negligent misrepresentation pursuant to N.C.G.S. § 25-5-117.  (*See* Pl.'s Resp. Mot. Dismiss 18).  France argued that Plaintiff's equitable subrogation allegation was misplaced and must necessarily fail, but did not argue that it had not been pleaded.  (*See* Def.'s Br. Supp. Mot. Dismiss 12–13).  Based on the foregoing, any contention that France had no notice of Plaintiff's allegations of equitable

subrogation to Suisse's rights against it for fraud and negligent misrepresentation is without merit.[2]

{23} Turning now to France's forum selection argument,[3] in equitable subrogation, the subrogee takes only those rights belonging to the subrogor and is subject to the defenses against the subrogor. *Nationwide Mut. Ins. Co. v. Don Allen Chevrolet Co.*, 253 N.C. 243, 248, 116 S.E.2d 780, 784 (1960). A forum selection clause may serve as one of those defenses. *See LendingTree v. Anderson*, 747 S.E.2d 292, 296 (N.C. Ct. App. 2013).

{24} In the motion to dismiss, France generally argued that all Plaintiff's claims were subject to the Geneva forum selection clause contained in Plaintiff's contract with Suisse and that it and Suisse were bound "only by the terms of the identical forum selection clauses in the respective Guarantees, which provide that any disputes will be resolved in Geneva." (Def.'s Br. Supp. Mot. Dismiss 4–6). After considering that argument, Judge Diaz denied the motion to dismiss as to the forum selection clause defense. *Speedway Motorsports Int'l Ltd. v. Bronwen Energy Trading, Ltd.*, No. 08 CVS 9450 ¶ 2 (N.C. Super. Ct. Jan. 21, 2009) (dismissing Plaintiff's breach of contract claim against France). The Court of Appeals affirmed the trial Court's ruling. *Speedway I*, 209 N.C. App. at 573–75, 706 S.E.2d at 269. Although France now seeks to narrow the scope of its argument, its forum selection defense is still encompassed in the Court's previous Order. Therefore, France's venue defense based on forum selection has been raised and denied, and this Court is the proper venue for Plaintiff's fraud and negligent misrepresentation claims.

{25} Inasmuch as the Motion does not require the Court to reach the merits of Plaintiff's claims nor determine whether Plaintiff is, in fact, subrogated to Suisse's rights against France, a ruling on Defendant's choice of law argument is unnecessary at this juncture.

---

[2] Although the Court considered dismissal of all of Plaintiff's claims on France's motion to dismiss pursuant to Rule 12(b)(6) and 12(b)(3), as previously noted, the Court may still consider dismissal of Plaintiff's claims on this Motion.

[3] Because venue is a ground for removal of a case to the proper court, the Court addresses France's forum selection argument. *See Shaw v. Stiles*, 13 N.C. App. 173, 185 S.E.2d 268 (1971).

3.

### THE IMPACT OF THE COURT OF APPEALS DECISIONS DOES NOT EVISCERATE PLAINTIFF'S REMAINING CLAIMS AGAINST FRANCE

{26}   France argues that Plaintiff's remedies are against Suisse, not France. (Def.'s Br. Supp. Mot. 4).  In support of its argument, France cites a portion of the Court of Appeals decision that reads, in pertinent part, as follows:

> [a]s this Court recognized in *Sunset Invs.*, "one bright star" exists regarding letter of credit transactions:  "[T]he basic aspect of the successful use of letters of credit lies in recognizing at the threshold that *every letter of credit involves separate and distinct contracts*; and that the contract between the issuing bank and the beneficiary to pay money to the beneficiary upon demand (and documentation if called for) must be kept chaste [and] independent of the underlying contract between the purchaser of the letter and the beneficiary."  This "basic aspect," of letters of credit is known as the "independence principle."
>
> . . . .
>
> In this case, by insisting that [Plaintiff] arrange with [Suisse] to have a demand guarantee—or letter of credit—issued from [Suisse] to [Defendant], [Defendant] obtained the "certainty and speed of payment" that letters of credit ensure.  [Defendant] would be paid—and was paid—by [Suisse] regardless whether [Suisse] was reimbursed by [Plaintiff] or of the status of the Oil Contracts.
>
> . . . .
>
> Now, however, in order to take advantage of the forum selection clause in [Plaintiff's] contract with [Suisse], [Defendant] argues that the [Plaintiff/Suisse] contract and the [Suisse/Defendant] contract are "inextricably intertwined."  We cannot reconcile the "independence principle" with [Defendant's] "intertwining" contract theory.  These two contracts—because they are part of a letter of credit transaction—are "separate and distinct contracts."  Any rights and obligations of [Suisse] to [Defendant]—by virtue of the demand guarantee—"are independent of the existence" of the contract or arrangement between [Plaintiff] and [Suisse.]

*Speedway I*, 209 N.C. App. at 573–75, 706 S.E.2d at 269 (internal citations omitted) (emphasis in original).

{27}   France also contends that the portion of *Speedway I* quoted above, together with the Court of Appeals' iteration of the "independence principle" in *Speedway II*, makes clear that the obligations between Suisse and Plaintiff have no bearing on

the obligations between Suisse and France. (Def.'s Br. Supp. Mot. 7). France's reading of *Speedway I* and *Speedway II* leads it to conclude that any and all of Plaintiff's claims are against the other parties. (Def.'s Br. Supp. Mot. 9). France further argues that a determination of Plaintiff's claims against it would require the Court to interpret the contracts Suisse entered into and, because Suisse is not subject to suit in this Court, such interpretation is improper. (Def.'s Reply Supp. Mot. 6–11).

{28} The Court of Appeals' description of the "independence principle" was grounded in principles of contract. *See Speedway I*, 209 N.C. App. at 564, 706 S.E.2d at 263; *see also Speedway II*, 209 N.C. App. at 485, 707 S.E.2d at 392. Specifically, the Court of Appeals was concerned with maintaining the separateness of the multiple contracts that are characteristic of letter of credit transactions. *See id.* However, nothing in the *Speedway* opinions shields a defendant from purely tort-based claims like those alleged by Plaintiff. *See id.* Furthermore, France cites no authority that forecloses non-contract, purely tort-based claims by application of the independence principle. The import of the independence principle is that France is not bound by and cannot seek the benefits of the contracts that Plaintiff made with others.

{29} Plaintiff's claims against France for fraud, negligent misrepresentation, conversion, unfair and deceptive practices, and accounting are not solely dependent upon contracts between Plaintiff and other parties. And, the Court of Appeals' opinions regarding the independence principle do not bar those claims. Any interpretation of Suisse's contracts in this case does not operate as a judgment against Suisse and does not prevent Plaintiff from proceeding on its claims against France in this Court.

{30} For the reasons stated herein, the Court **DENIES** the Motion.

**SO ORDERED**, this 26th day of February, 2014.