━━━━━━━━━━━━━━

IN RE H.T.

No. COA06-177

(Filed 19 December 2006)

### 1. Process and Service— calculation of period of time— Saturday, Sunday, or legal holiday—waiver of notice

The trial court did not lack subject matter jurisdiction in a termination of parental rights case based on alleged improper service of the summons and petition under N.C.G.S. § 1A-1, Rule 5 to terminate parental rights, because: (1) when calculating a period of time prescribed or allowed by statute, the last day of the period to be so computed is to be included, unless it is a Saturday, Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday, or a legal holiday, N.C.G.S. § 1A-1, Rule 6(a); (2) the date of the original petition alleging neglect was 12 July 2002, the petition by motion to terminate respondents' parental rights was made on 12 July 2004, a review of the 2004 calendar shows that 11 July 2004 fell on a Sunday, and thus, the DSS petition was properly served under N.C.G.S. § 1A-1, Rule 5; (3) service on respondent mother's attorney was permissible; and (4) a party who is entitled to notice of a hearing waives that notice by attending the hearing of the motion and participating in it without objection to lack thereof.

### 2. Termination of Parental Rights— grounds—sufficiency of facts

The trial court did not lack subject matter jurisdiction in a termination of parental rights case based on the petition failing to allege sufficient facts to determine a grounds for termination, because: (1) the petition stated the legal basis for the petition alleging three different grounds for termination including neglect, willfully leaving the child outside her custody for more than

**IN RE H.T.**

[180 N.C. App. 611 (2006)]

twelve months without showing reasonable progress, and willfully failing to pay child support despite an ability to do so; (2) although this language would constitute a bare recitation, the petition also stated that the entire court file in the above numbered juvenile action was incorporated by reference and made a part thereof as if set out word for word; and (3) all of the court orders were incorporated into the petition with facts such as respondent mother's drug use, her failure to comply with the requirements of the court order to keep custody of the child, and her criminal convictions.

### 3. Termination of Parental Rights— service of process—findings of fact—incorporation by reference of entire court file—waiver of notice

Respondent father's assignments of error in a termination of parental rights case contending that the trial court did not have subject matter jurisdiction based on the failure of the petition to allege sufficient facts and lack of proper service of the summons and petition mirror those of respondent mother and are dismissed for the same reasons, including the petition's incorporation by reference of the entire court file and waiver of notice.

### 4. Termination of Parental Rights— technical errors—failure to show prejudice

Respondent father was not prejudiced by alleged errors in a termination of parental rights case including delays in the filing of the petition and conduct of the hearing, the failure of DSS to attach the dispositional order conferring custody to the termination petition, the incomplete transcript, and the failure of the trial court to conduct a special hearing prior to the adjudication hearing, because: (1) respondent made no specific showings or allegations of prejudice stemming from any of these technical errors, but only made general statements of prejudice per se with respect to the timing delays, as well as alleged violations of his constitutional and due process rights; (2) respondent had ample notice of the issues and allegations at stake in the termination proceedings; (3) the trial court's findings of fact show respondent had not had any contact with the child from 7 July 2002 until the termination hearing began on 18 February 2005, and he had taken no action during the length of this case; and (4) respondent refused to follow any recommendations of the various DSS case plans including failing to undergo any treatment for his substance abuse or domestic violence problems.

**IN RE H.T.**

[180 N.C. App. 611 (2006)]

### 5. Termination of Parental Rights— failure to make specific findings of fact—prevailing party drafts order

The trial court did not err in a termination of parental rights case by failing to make specific findings of fact on the record and allegedly deferring its factfinding duties to the DSS attorney, because nothing in the statute or common practice precludes the trial court from directing the prevailing party to draft an order on its behalf.

### 6. Termination of Parental Rights— grounds—willfully failed to pay child support—willfully abandoned child

The trial court did not err in a termination of parental rights case by concluding that respondent father willfully failed to pay child support and willfully abandoned the child, because: (1) a single ground under N.C.G.S. § 7B-1111 is sufficient to support an order terminating parental rights; and (2) the trial court terminated respondent's rights on four grounds, respondent failed to challenge the two remaining grounds, and either sufficed as an alternative ground for termination.

Appeal by respondent-mother and respondent-father from order entered 31 May 2005 by Judge Mark E. Powell in District Court, Henderson County. Heard in the Court of Appeals 17 October 2006.

*Womble Carlyle Sandridge & Rice, PLLC, by Christopher G. Daniel, for petitioner-appellee Guardian Ad Litem.*

*Michael E. Casterline, for respondent-mother.*

*Hall & Hall Attorneys at Law, P.C., by Douglas L. Hall, for respondent-father.*

WYNN, Judge.

"[A] party who is entitled to notice of a hearing waives that notice by attending the hearing of the motion and participating in it without objecting to lack thereof."[1] Here, because Respondents, mother and father, participated in the hearing to terminate their parental rights, we reject their challenges to proper service in this matter.

Additionally, in general, technical errors and violations of the Juvenile Code will be found to be reversible error only upon a show-

---

1. *In re B.M.*, 168 N.C. App. 350, 355, 607 S.E.2d 698, 702 (2005) (citing *In re J.S.*, 165 N.C. App. 509, 514, 598 S.E.2d 658, 662 (2004)).

**IN RE H.T.**

[180 N.C. App. 611 (2006)]

ing of prejudice by respondents.[2] Here, Respondents argue a number of technical errors and deficiencies in the conduct of the proceedings to terminate their parental rights. Because Respondents make no specific allegations or showings of prejudice resulting from these errors, we affirm the trial court's order terminating their parental rights.

Respondents are the natural parents of a minor child removed from their home in July 2002 by the Henderson County Department of Social Services (DSS). According to the DSS petition, the parents showed signs of serious impairment when the child was removed. Neither parent could give an account of what, if anything, the child had been fed that day, and there was evidence of some domestic violence between the parents, as well as bullets found on the floor of the living room where the child had been playing. Respondent-father was diagnosed with a drug overdose and delirium later that day; his drug screen revealed opiates, cannibinoids, amphetamines, and benzodiazepines. Respondent-mother refused to take a drug screen the next day, but the petition stated that she had needle marks on her arms, indicative of intravenous drug use. DSS also averred that it had substantiated claims of neglect in the past with respect to Respondents, although they had subsequently complied with their treatment plan and their case was closed. At that time, the child went to live with a maternal cousin and her husband.

In an order dated 23 September 2002, the child was adjudicated neglected based on the allegations of domestic violence and substance abuse in the petition and according to the definition provided in North Carolina General Statutes § 7B-101(15). However, Respondent-mother retained custody of the child, so long as she continued to comply with recommendations outlined in the Guardian Ad Litem court report. Specifically, Respondent-mother was ordered to maintain her participation in the Mary Benson House, a one-year residential substance abuse program in Asheville, where she had been living with the child since 5 August 2002.

Respondent-mother was allowed to spend weekends away from the Home with the child; on 30 September 2002, DSS received a message that Respondent-mother and the child had not returned to the

---

2. *See, e.g., In re C.L.C.*, 171 N.C. App. 438, 443, 615 S.E.2d 704, 707 (2005) ("[T]his Court has held that time limitations in the Juvenile Code are not jurisdictional in [termination] cases . . . and do not require reversal of orders in the absence of a showing by the appellant of prejudice resulting from the time delay."), *aff'd per curiam in part, disc. review improvidently allowed in part*, 360 N.C. 475, 628 S.E.2d 760 (2006).

House following their weekend pass. DSS subsequently filed a motion for review of the order on 7 October 2002, seeking immediate custody of the child. On 9 October 2002, the district court formalized its 23 September handwritten order, entering a typewritten order adjudicating the child neglected but finding it in the best interest of the child to remain in the custody of Respondent-mother, so long as she continued in the residential substance abuse program. The court also ordered Respondent-father to undergo an alcohol and drug assessment and denied him unsupervised visitation with the child.

After Respondent-mother continued to fail to return to the residential substance abuse program, DSS filed for nonsecure custody on 7 October 2002. The child was placed with a maternal uncle and aunt on 17 October 2002, with supervised visitation for Respondent-mother and no visitation for Respondent-father. The child had five placements within the first four months of DSS involvement but was stable in foster care placement after it was made on 21 November 2002, until the date of the termination order. During this period, Respondent-mother was in and out of substance abuse programs and prison, and Respondent-father was also incarcerated for several lengths of time. Respondent-mother had limited interaction with the child after he entered DSS custody and foster care; Respondent-father did not see the child after the initial removal and had no contact with him at all aside from two phone calls in June 2003.

In 2004, the child's foster parents expressed interest in adopting him, as did a great-aunt and great-uncle, and an order was entered on 16 April 2004 changing the permanency plan to termination of parental rights and adoption. On 12 July 2004, DSS filed a petition to terminate the parental rights of Respondents regarding the child. For Respondent-mother, the grounds were neglect, willfully leaving the child in care or placement outside her custody for twelve months without showing reasonable progress to correct the circumstances leading to the placement, and willfully failing to pay a reasonable share of the cost of the child's care, despite an ability to do so. The same grounds were alleged for Respondent-father, as well as that he had willfully abandoned the child for more than six months immediately preceding the filing of the petition.

After a series of continuances and other delays, some of which related to who might adopt the child, an order was entered on 31 May 2005, terminating the parental rights of Respondents on each of the grounds alleged in the DSS petition. Respondents now appeal indi-

**IN RE H.T.**

[180 N.C. App. 611 (2006)]

vidually from that termination order; we address each of their appeals in turn.

## Respondent-Mother's Appeal

In her appeal, Respondent-mother argues that the trial court lacked subject matter jurisdiction because (I) there was not proper service of the summons and petition to terminate parental rights and (II) the petition to terminate parental rights did not allege specific facts sufficient to determine that grounds for termination existed.

[1] First, Respondent-mother contends service of the petition to terminate her parental rights should have been in accordance with Rule 4 of the North Carolina Rules of Procedure, rather than Rule 5, as Respondent-mother admits was done. *See* N.C. Gen. Stat. § 7B-1102(b) ("A motion pursuant to subsection (a) of this section [authorizing a person to file for termination of parental rights when a district court is exercising jurisdiction over the child and parent in an abuse, neglect, or dependency proceeding] and the notice required . . . shall be served in accordance with . . . Rule 5(b)"). Respondent-mother argues that the instant case fell within one of the exceptions to the service provisions of N.C. Gen. Stat. § 7B-1102(b), such that service was required to be in accordance with Rule 4 and its more rigorous provisions. *See* N.C. Gen. Stat. § 1A-1, Rule 4 (2005). Specifically, Respondent-mother cites the exception named in N.C. Gen. Stat. § 7B-1102(b)(1)(c) that "[t]wo years ha[ve] elapsed since the date of the original action," which triggers the application of Rule 4.

When calculating a period of time prescribed or allowed by statute, "[t]he last day of the period to be so computed is to be included, unless it is a Saturday, Sunday or a legal holiday, . . . in which event the period runs until the end of the next day which is not a Saturday, Sunday, or a legal holiday." N.C. Gen. Stat. § 1A-1, Rule 6(a) (2005). Here, the date of the original petition alleging neglect was 12 July 2002. The petition by motion to terminate Respondents' parental rights was made on 12 July 2004. Respondent-mother alleges that this period exceeds the two-year limit by one day. However, a review of a 2004 calendar clearly shows that 11 July 2004 fell on a Sunday, meaning that 12 July 2004 was the "end of the next day which [wa]s not a Saturday, Sunday, or a legal holiday" and therefore fell within the statutory period. The DSS petition was therefore properly served according to the provisions of Rule 5 of the North Carolina Rules of Civil Procedure.

**IN RE H.T.**

[180 N.C. App. 611 (2006)]

Respondent-mother further argues that the summons issued by the court following the filing of the DSS petition was improperly served on her counsel, rather than on herself. *See* N.C. Gen. Stat. § 7B-1106(a)(1) (2005) (requiring a summons upon the filing of a petition to be directed to "[t]he parents of the juvenile"). However, Rule 5(b) of the North Carolina Rules of Civil Procedure states that service of pleadings and other documents subsequent to the original complaint "may be made upon either the party or, unless service upon the party personally is ordered by the court, upon the party's attorney of record." N.C. Gen. Stat. § 1A-1, Rule 5(b) (2005). Because we have found that Rule 5 service of process was appropriate in this case, we likewise find that the service on Respondent-mother's attorney was permissible.

Moreover, we note that "a party who is entitled to notice of a hearing waives that notice by attending the hearing of the motion and participating in it without objecting to lack thereof." *In re B.M.*, 168 N.C. App. 350, 355, 607 S.E.2d 698, 702 (2005) (citing *In re J.S.*, 165 N.C. App. 509, 514, 598 S.E.2d 658, 662 (2004)). Here, Respondent-mother and her attorney were present at the hearing, participated in the hearing, and made no objection there as to lack of proper service or notice. Respondent-mother therefore waived the requirement of proper notice. This assignment of error is without merit and is accordingly overruled.

**[2]** Second, Respondent-mother argues that the trial court did not have subject matter jurisdiction because the petition to terminate her parental rights did not allege facts sufficient to determine a grounds for termination. *See* N.C. Gen. Stat. § 7B-1104(6) (2005) (requiring the petition to contain sufficient facts to determine the existence of at least one grounds for termination).

The factual allegations of a petition to terminate parental rights need not be "exhaustive or extensive," but they must "put a party on notice as to what acts, omissions or conditions are at issue." *In re Hardesty*, 150 N.C. App. 380, 384, 563 S.E.2d 79, 82 (2002). A petition that sets forth only a "bare recitation . . . of the alleged statutory grounds for termination" does not meet this standard. *In re Quevedo*, 106 N.C. App. 574, 579, 419 S.E.2d 158, 160 (1992). However, sufficiently detailed allegations need not appear on the face of the petition but may be incorporated by reference. *See id.* at 579, 419 S.E.2d at 160 (finding that "the petition incorporates an attached custody award . . . and the custody award states sufficient facts to warrant such a determination").

**IN RE H.T.**

[180 N.C. App. 611 (2006)]

Here, the petition stated the legal basis for the petition, alleging three different grounds for termination, namely—neglect, willfully leaving the child outside her custody for more than twelve months without showing reasonable progress, and willfully failing to pay child support despite an ability to do so. Although this language would constitute a "bare recitation," the petition also states, in paragraph 3, that "[t]he entire Court file in the above numbered juvenile action is incorporated herein by reference and made a part hereof as if set out word for word." As such, all of the court orders in the instant case were incorporated into the petition, with facts such as Respondent-mother's drug use, her failure to comply with the requirements of the court order to keep custody of the child, and her criminal convictions. We therefore find that the petition alleged facts sufficient to determine whether grounds for termination existed, such that the trial court did have subject matter jurisdiction.

Accordingly, we find no error in the trial court's termination of Respondent-mother's parental rights.

### Respondent-Father's Appeal

Respondent-father argues in his appeal that (I) the trial court lacked subject matter jurisdiction because of five separate grounds, namely, (1) the delay between when the petition was filed and when the termination hearing was held, (2) the delay in filing the petition, (3) the failure of the petition to allege specific facts sufficient to determine grounds for termination, (4) the dispositional order conferring custody on DSS was not attached to the petition to terminate, and (5) the lack of proper service of the summons and petition. He further alleges that (II) the trial court erred by concluding that his failure to pay child support was willful, in light of his incarceration during the relevant period; (III) the trial court erred by finding as fact that he had willfully abandoned the child; (IV) the trial court erred by failing to make specific findings of fact on the record and improperly deferring its fact-finding responsibilities to the DSS attorney; (V) his constitutional and due process rights were violated due to an incomplete transcript of the proceedings in question; and (VI) the trial court erred by failing to conduct a special hearing prior to the adjudication hearing and after proper notice.

[3] First, we note that Respondent-father's assignments of error contending the trial court did not have subject matter jurisdiction in this case due to the failure of the petition to allege sufficient facts and due to lack of proper service of the summons and petition mirror

those of Respondent-mother. Accordingly, for the same reasons cited above concerning the petition's incorporation by reference of the entire court file and waiver of notice, we reject these assignments of error.

**[4]** Next, we turn to Respondent-father's assignments of error concerning the delays of the filing of the petition and conduct of the hearing, the failure of DSS to attach the dispositional order conferring custody to the termination petition, the incomplete transcript, and the failure of the trial court to conduct a special hearing prior to the adjudication hearing. We consider these arguments together because, to win a reversal of the trial court's order on any of these grounds, Respondent-father must show he was prejudiced by the alleged error. *See In re As.L.G.*, 173 N.C. App. 551, 557, 619 S.E.2d 561, 565 (2005), *disc. review improvidently allowed*, 360 N.C. 476, 628 S.E.2d 760 (2006) (declining to vacate a termination order despite a seven-month delay in filing the petition because "it is apparent that prejudice can manifest itself in many forms and can equally befall parties other than the respondent, but it must nonetheless be appropriately articulated."); *In re D.J.D.*, 171 N.C. App. 230, 242, 615 S.E.2d 26, 34 (2005) (requiring a showing of prejudice in order for the technical error of a delay in holding the termination hearing to be reversible); *In re B.D.*, 174 N.C. App. 234, 242, 620 S.E.2d 913, 918 (2005) (holding that failure to attach a copy of the custody order was not reversible error where respondent failed to show any prejudice arising from that failure), *disc. review denied*, 360 N.C. 289, 628 S.E.2d 245 (2006); *In re L.O.K.*, 174 N.C. App. 426, 437, 621 S.E.2d 236, 243 (2005) ("Mere failure to comply with [the statute requiring transcription of juvenile hearings] standing alone is, however, not by itself grounds for a new hearing. A party must also demonstrate that the failure to record the evidence resulted in prejudice to that party.") (internal citation and quotation omitted); *In re B.D.*, 174 N.C. App. at 240, 620 S.E.2d at 917 (finding lack of notice of special hearing not to be reversible error when respondents had denied all material allegations of the petition, such that all grounds for termination were in dispute and no further issues remained to be delineated by the trial court so respondents did not suffer prejudice).

Here, Respondent-father has made no specific showings or allegations of prejudice stemming from any of these technical errors; rather, he makes only general statements of prejudice *per se* with respect to the timing delays, as well as alleged violations of his constitutional and due process rights. We find these arguments to be

without merit. Respondent-father had ample notice of the issues and allegations at stake in the termination proceedings; moreover, the trial court's findings of fact show that Respondent-father had not had any contact with the child from 7 July 2002 until the termination hearing began on 18 February 2005, a period of thirty-one months, and that he had "taken no action during the length of this case." He refused to follow any recommendations of the various DSS case plans, including failing to undergo any treatment for his substance abuse or domestic violence problems. In light of his lack of relationship or contact with the child, the delay in the hearing and other technical errors did not prejudice Respondent-father. *See In re D.J.D.*, 171 N.C. App. at 244, 615 S.E.2d at 35 (holding that a delay in the hearing "is not so prejudicial to respondent to warrant reversal where there is ample evidence on multiple grounds to terminate respondent's rights.").

Because Respondent-father failed to show that any of these technical errors resulted in prejudice to him or to the child, we reject these assignments of error.

**[5]** Respondent-father argues one additional procedural error, namely, that the trial court erred by failing to make specific findings of fact on the record and improperly deferred its fact-finding duties to the DSS attorney. As this Court has previously held, "[n]othing in the statute or common practice precludes the trial court from directing the prevailing party to draft an order on its behalf. Instead, similar procedures are routine in civil cases." *In re J.B.*, 172 N.C. App. 1, 25, 616 S.E.2d 264, 279 (2005) (citation and quotation omitted). Accordingly, we conclude the trial court did not err in directing the petitioner to draft the termination order on its behalf. This assignment of error is without merit.

**[6]** Lastly, Respondent-father challenges the trial court's conclusions that he willfully failed to pay child support and willfully abandoned the child, such that neither was an appropriate grounds for termination of his parental rights. However, a single ground under North Carolina General Statutes § 7B-1111 is sufficient to support an order terminating parental rights. *See In re Pierce*, 67 N.C. App. 257, 261, 312 S.E.2d 900, 903 (1984). Here, the trial court terminated Respondent-father's parental rights on four grounds: the two challenged by Respondent-father in his appeal, as well as neglect and willfully leaving the child in care or placement outside his custody for more than twelve months without reasonable progress. Because

Respondent-father does not challenge these two remaining grounds, either of which suffices as an alternate grounds for termination, we decline to examine Respondent-father's arguments as to the other grounds.

Accordingly, we find no prejudicial error in the trial court's termination of Respondent-father's parental rights.

Affirmed.

Judges McGEE and McCULLOUGH concur.