An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-400

Filed: 6 October 2015

Greene County, No. 13 JT 17, 19

IN THE MATTER OF: A.D.B., A.D.B.,
          MINOR CHILDREN.

Appeal by respondent-mother and respondent-father from orders entered 4 February 2015 by Judge R. Les Turner in Greene County District Court. Heard in the Court of Appeals 24 August 2015.

> *Baddour, Parker, Hine & Hale, P.C., by E. B. Borden Parker and Helen S. Baddour, for petitioner-appellee Greene County Department of Social Services.*
>
> *K&L Gates LLP, by Leah D'Aurora Richardson, for guardian ad litem.*
>
> *Mercedes O. Chut for respondent-mother-appellant.*
>
> *Richard Croutharmel for respondent-father-appellant.*

BRYANT, Judge.

Where the trial court's findings of fact in support of the conclusion that the minor children were neglected juveniles were supported by clear, cogent, and convincing evidence, there were sufficient grounds to terminate Mother's parental rights, and the trial court had sufficient basis to assume jurisdiction over the termination of parental rights action, we affirm the trial court. Where the trial court

had sufficient basis to deny Father's motion to dismiss, we affirm the trial court. Also, where the trial court released Father's attorney during a permanency planning review hearing, we find no error.

The mother and father of A.D.B. and A.D.B. (hereinafter "Ashley" and "Amelia")[1] appeal from orders terminating their parental rights to the juveniles on the ground of neglect. We affirm the orders.

On 6 April 2013, respondent-father ("Father") assaulted respondent-mother ("Mother") with a champagne glass, cutting her on the arm, forehead, and top of her head. Mother signed a safety plan agreeing to keep the children away from Father. Mother also obtained a domestic violence protection order. On 12 May 2013, Mother contacted Father by cell phone. She traveled with the children to Rocky Mount and transported Father back to Greene County with them. Law enforcement officers stopped Mother's vehicle and arrested Father on charges of assault and battery and violation of the domestic violence protection order.

On 15 May 2013, the Greene County Department of Social Services ("DSS") filed juvenile petitions alleging that five-year-old Ashley and one-year-old Amelia were neglected juveniles: they did not receive proper care, supervision or discipline from their parents and lived in an environment injurious to their welfare. A trial court adjudicated the girls neglected juveniles on 24 June 2013 and placed them in

---

[1] The parties stipulated that the children shall be referenced by these pseudonyms in the briefs.

the custody of DSS. The court held a permanency planning hearing on 17 February 2014 and entered orders changing the permanent plan for each child to adoption.

DSS subsequently filed petitions to terminate the parental rights of respondents on the grounds that they have neglected Ashley and Amelia and continue to neglect them. On 18 December 2014, the court conducted a hearing upon the petitions, and on 4 February 2015, the court filed orders terminating the parental rights of both parents on the ground alleged in the petitions. Mother and Father appealed.

---

On appeal, Mother raises the following issues: whether the trial court erred by (I) making certain findings of fact; (II) concluding that Mother neglected her minor children; (III) terminating her parental rights; and (IV) assuming jurisdiction over the parental rights action.

Father raises the following issues on appeal: whether the trial court erred by (V) releasing Father's attorney; and (VI) denying Father's motion to dismiss.

*Standard of Review*

We review an order terminating parental rights to determine whether the findings of fact are supported by clear, cogent and convincing evidence and whether the conclusions of law are supported by the findings of fact. *In re Shepard*, 162 N.C.

App. 215, 221, 591 S.E.2d 1, 6 (2004). We review the court's conclusions of law *de novo. In re S.N.*, 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008).

*I*

First, Mother argues that "the record does not contain clear, cogent and convincing evidence to support many findings, or the inferences they produce." We disagree.

The trial court in a termination of parental rights proceeding acts both as judge and jury, assigning weight to the evidence as it deems appropriate, and resolving conflicts in the evidence. *In re Oghenekevebe,* 123 N.C. App. 434, 439, 473 S.E.2d 393, 397–98 (1996). "If different inferences may be drawn from the evidence, the trial judge must determine which inferences shall be drawn and which shall be rejected." *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365–66 (2000) (citation omitted). An appellate court is bound by the findings of fact made by the trial court "where there is some evidence to support those findings, even though the evidence might sustain findings to the contrary." *In re Montgomery,* 311 N.C. 101, 110–11, 316 S.E.2d 246, 252–53 (1984) (citation omitted).

Mother contends that findings of fact numbers 15 and 16, which concern Mother's residential arrangements since the time the original juvenile petitions were filed, erroneously "suggest" that Mother "did not follow the court's directive to obtain stable housing." Mother takes exception to statements in finding of fact number 16

that: (1) she "did not furnish a copy of the lease" for her current residence, an apartment operated by Kinston Housing, "but did furnish a letter stating that she could live there"; and (2) she told Kinston Housing that she had two children, referring to Ashley and Amelia, who would be living with her there. Mother submits that these statements created erroneous inferences that there was no lease or the home was not permanent.

We find competent evidence to support findings of fact numbers 15 and 16. The social worker responsible for the case and Mother both testified consistently regarding the locations where Mother lived since the beginning of the case. The social worker testified that Mother never supplied her with a copy of the lease to her current apartment, only a letter from Kinston Housing stating there was a lease, and that Mother stated she would bring the lease with her to court. When asked at the hearing whether she had brought the lease with her, Mother responded that she had the letters which were sent to her. Mother never introduced a lease into evidence or produced a lease.

Mother next challenges findings of fact numbers 19 through 21, which state that Mother failed to: (a) follow through with recommended domestic violence counseling; (b) complete an empowerment class in Kinston with SAFE; and (c) follow through with services provided by an agency in Snow Hill. Mother argues these findings are "inaccurate, misleading and unsupported by the evidence." She submits

the findings are misleading because they mistakenly suggest she was ordered or recommended to attend multiple classes, and they misrepresent the timeline of events. She also maintains the evidence does not support the essence of the findings, i.e., that she failed to follow through with recommended counseling.

We find evidentiary support for findings of fact numbers 19 through 21. The record shows that on 24 June 2013 and again on 12 August 2013, the court ordered Mother, *inter alia*, to: obtain a mental health assessment and follow all recommendations; obtain a domestic violence assessment and follow all recommendations; and attend and participate in a parenting class approved by DSS. The social worker testified that although the mental health assessment did not state how many sessions were needed, a treating psychologist indicated that counseling "should be ongoing." The psychologist testified that she saw Mother multiple times between June 2013 and 24 October 2014 and that since the latter date, counseling has been on an "as-needed basis." The social worker also testified that Mother attended only three of twelve SAFE empowerment classes and did not finish the program. The social worker testified that when she first became involved with the case, Mother and the children had been receiving services from Lucille's in Snow Hill "working with her on empowerment through motivating her to finish her GED,[2] helping her find a job, helping her find resources for transportation. They would

---

[2] At the time the orders terminating Mother's parental rights to Ashley and Amelia were entered, the trial court found that Mother had obtained her GED.

make suggestions on helping her keep her house clean . . . ." After the children were taken into the custody of DSS, Lucille's decided not to continue its services due to Mother's "lack of follow through." The term "follow through" is defined in The American Heritage College Dictionary as "[t]o carry an act, a project, or an intention to completion; pursue fully." American Heritage College Dictionary 529 (3d ed. 1993). This evidence demonstrates that Mother did not complete everything ordered by the court to completion.

Mother next challenges findings of fact numbers 24 through 28, which concern Mother's visitations and interactions with the children during the visits. Specifically, the court found in the order terminating her rights to Ashley:

> 24. That the mother has had visitation with the juvenile and the siblings of the juvenile, but has missed several visits and missed the most recent scheduled visit on December 16, 2014.
>
> 25. That when the mother visits, the children often play among themselves and do not interact a lot with the mother. The children recognize the mother as their mother.
>
> 26. That this juvenile gets very upset when a visit is set and the mother does not appear.[3]
>
> 27. That during the visits with both of her daughters, the mother has a hard time engaging both at the same time.
>
> 28. That the juveniles do not cry at the end of the visits at

---

[3] Finding of fact number 26 in the order terminating Mother's parental rights to Amelia states: "[T]his juvenile cries and screams to get the attention of the mother when the mother is trying to give attention to the sister of the juvenile at the visits."

this time.

Mother disagrees with the court's findings that she "missed several visits," that she and the children have little interaction during the visits, and that the children display little affection during the visits.

The social worker testified that there have been "several missed visitations," as recent as the Tuesday prior to the hearing. She further testified that she observed all but one or two of the visits.

> The children are usually very excited to see her and she is usually pretty excited to see them. They hug. There is positive interaction. Recently [Amelia's] behavior has been difficult during the visitation. She often screams. She is very, very active. Tries to leave the room. Flips the light on and off. She screams to get attention. If [Mother] is paying attention to [Ashley,] [Amelia] screams to get [inaudible]. She oftentimes gives [Ashley] her phone to watch a video, like Dora the Explorer or something like that, which is what [Ashley] wants to do. She wants to immediately get the phone and watch videos. [Mother] usually takes a few pictures during the visits. She takes videos of [Ashley] singing and dancing.
>
> [Mother] went through a stage where the visits were not the best because the girls would just play and she would just kind of sit back and watch them. There was not a whole lot of interaction. But over time, in talking to [Mother] about it, that has gotten better. She has a hard time engaging both of the girls at the same time in one activity. Part of that, I think, is because [Amelia] is so busy and so active. [Mother] will correct either of the children and tell them "you can't do that" or "you shouldn't do that". Sometimes they listen and sometimes they don't. At the end of the visits, the children don't cry anymore. They are pretty used to her leaving.

> There were two visits where the children were brought to DSS after [Mother] called and said that she would come to the visits and then didn't show up, and those really, really upset [Ashley]. She was very devastated by those visits not taking place after she had her hopes up that they would, and it was my understanding during those two times that she had transportation issues.

We cannot agree with DSS and the guardian *ad litem* that the social worker's testimony concerning her observations of the visits supports the findings that the children often play among themselves and do not interact a lot with the mother. The social worker's testimony indicates that although there may have been a time when there was little interaction, Mother improved her engagement with the children over the course of time. The social worker further testified that the children are excited to see Mother and "[c]all her mommy," that they hug each other and show affection, and that they interact with each other. We conclude the portion of finding of fact number 25 which suggests otherwise is not supported by the evidence.

Mother next challenges the court's finding of fact in each order in which the court found that Mother has a son who is in his father's custody but she is not exercising court-ordered visitation with the child. After carefully reviewing the record, we are unable to find any evidence to support the portion of the finding that Mother is not exercising court-ordered visitation. At best, the testimony of the social worker shows the Mother and the father of the child had some "conflict" in the planning of the visits, not that Mother failed to visit the child.

Mother next disagrees with the court's statement in finding of fact number 38 that she "has started to comply with the orders of the Court but it appears that her compliance is timed around Court hearings." We find support for this finding in the record. The social worker testified that Mother attended domestic violence counseling in June and July 2013, March 2014, and twice in October 2014; that Mother completed a parenting class on 27 October 2014; and that Mother moved into a three-bedroom home in November 2014. The record shows a pretrial conference hearing was held on 24 June 2013, permanency planning hearings were held on 17 February 2014 and 11 August 2014, the pretrial conference for the termination of parental rights hearing was held on 15 September 2014, and a special hearing was held on 6 October 2014 upon the parents' motion to postpone the termination of parental rights hearing to 8 December 2014. The termination of parental rights hearing was conducted on 18 December 2014.

Mother's final claim concerning the lower court's findings of fact is that findings of fact number 36, 37, and 39—in which the court found that the parents have neglected the juveniles, that they will continue to neglect them, and that grounds exist to terminate her parental rights on the basis of neglect—are actually conclusions of law. We agree but conclude the error is not prejudicial as the court also stated as conclusion of law number 5 in both orders that "[t]o the extent that any

Finding of Fact is more properly designated a Conclusion of Law the same is hereby incorporated herein by reference."

Having determined portions of the court's findings of fact are not supported by evidence, we must next determine whether these unsupported findings of fact lead to prejudicial error. "When . . . ample other findings of fact support an adjudication of neglect, erroneous findings unnecessary to the determination do not constitute reversible error." *In re T.M.*, 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006) (citation omitted). As discussed herein, we conclude the erroneous findings concerning Mother's interaction with the children during visitations do not require reversal of the orders.

## II

Next, Mother contends the court erred by concluding that her parental rights may be terminated on the ground of neglect. She argues there is no evidence that she had not successfully addressed the basis for removal of the children from the home, namely, domestic violence. She also argues there is no evidence that she was neglecting the children at the time of the hearing to terminate her parental rights or that she is likely to neglect the children in the future. She submits the court improperly used her failure to fulfill conditions unrelated to the reason for removal from the home to support termination of her parental rights. We disagree.

To terminate parental rights pursuant to N.C. General Statutes, section 7B-1111(a)(1), the trial court must conclude that the parent has abused or neglected the child. N.C. Gen. Stat. § 7B-1111(a)(1) (2013). A juvenile is neglected when the juvenile is not provided proper care, supervision, discipline or the juvenile lives in an environment injurious to his or her welfare. N.C. Gen. Stat. § 7B-101(15) (2013). This Court has consistently held that a showing must be made that the juvenile's physical, mental or emotional condition is impaired or at substantial risk for impairment as a consequence of a failure to provide proper care, supervision or discipline. *In re D.B.J.*, 197 N.C. App. 752, 755, 678 S.E.2d 778, 780 (2009). "A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." *In re Young*, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997) (citation omitted). The court must consider evidence of any changed circumstances since the time of a prior adjudication and the probability that the neglect will be repeated if the child is returned to the parent's care. *In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984). In making the latter determination, the court "must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." *In re McLean*, 135 N.C. App. 387, 396, 521 S.E.2d 121, 127 (1999).

The original orders adjudicating the two girls as neglected juveniles incorporated by reference the court reports prepared by the social worker in charge

of the case and the guardian *ad litem*. These reports relate that Mother's residence at the time of the 24 June 2013 adjudication hearing was infested with roaches and her children were coming to school "dirty and [unkempt]." Mother declined the services offered by two agencies to assist her in keeping the children dressed in clean clothing. Ashley, who was born in October 2007, had never had her teeth cleaned before 21 June 2013. Ashley underwent eye surgery in July 2012 to correct severe strabismus, but Mother failed to take Ashley to recommended follow-up appointments related to the eye condition. Mother also failed to keep the younger child's immunizations on schedule. The social worker recommended that Mother maintain safe and stable housing which is not infested by insects or rodents, attend parenting classes, and obtain mental health and domestic violence assessments. The guardian *ad litem* also recommended that Mother be required to maintain stable and appropriate housing in addition to stable, suitable employment or obtain high school equivalency. The court adopted the recommendations of the social worker and guardian *ad litem* to address these issues. These reports and recommendations indicate that the adjudication was not based solely upon domestic violence in the home but was based also upon Mother's failure to provide them with proper care and a safe home.

The court's findings in the termination orders further indicate that Mother failed to meet the obligations imposed upon her by the trial court and that the neglect

will be likely to continue. They show that Mother has lived in six different locations during the nineteen months preceding the termination of parental rights hearing, that she has not completely complied with the obligations of domestic violence counseling and followed the recommendations of the mental health assessment, and that she has not attended DSS-approved parenting classes.

*III*

Mother next contends that the court erred by failing to make pertinent findings of fact before terminating her parental rights. We disagree.

North Carolina General Statutes, section 7B-1110(a) provides the following:

> After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest. The court may consider any evidence . . . that the court finds to be relevant, reliable, and necessary to determine the best interests of the juvenile. In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent,

guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a) (2013). Although the statute requires the court to consider all of the factors, the court is required to make written findings of fact only regarding those factors which are relevant. *In re D.H.*, ___ N.C. App. ___, ___, 753 S.E.2d 732, 735 (2014). A factor is relevant if there is conflicting evidence concerning the factor such that it is placed in issue. *In re H.D.*, ___ N.C. App. ___, ___, 768 S.E.2d 860, 866 (2015).

Mother argues the court erred by failing to make findings of fact concerning the children's ages, the bond between her and the two children, and the likelihood that the children may be adopted. We disagree; the court did make these findings. In finding of fact number 9 in both orders, the court noted the date of birth of the particular child. In findings of fact numbers 24–28, the court made findings of fact concerning the bond and interactions between Mother and the children. In findings of fact numbers 40–42, the court found that the children are in a foster home that is considered a pre-adoptive placement, that the children are bonded with the foster parents, and that the foster parents are bonded with the children and treat them like family. Accordingly, we overrule this argument.

*IV & VI*

Mother joins with Father in contending the court lacked subject matter jurisdiction because the petitions fail to allege facts sufficient to warrant a determination that grounds for terminating parental rights existed. We disagree.

In their answers to the petitions, both Mother and Father asserted the petitions failed to state sufficient grounds for relief. At the commencement of the termination of parental rights hearing, Father moved to dismiss the petitions on the basis asserted in his answers filed 1 August 2014. The trial court summarily denied the motion and proceeded to conduct the hearing.

A petition to terminate parental rights must contain "[f]acts that are sufficient to warrant a determination that one or more of the grounds for terminating parental rights exist." N.C. Gen. Stat. § 7B-1104(6) (2013). "While there is no requirement that the factual allegations [in a petition for termination of parental rights] be exhaustive or extensive, they must put a party on notice as to what acts, omissions[,] or conditions are at issue." *In re Hardesty*, 150 N.C. App. 380, 384, 563 S.E.2d 79, 82 (2002). "[S]ufficiently detailed allegations need not appear on the face of the petition but may be incorporated by reference." *In re H.T.*, 180 N.C. App. 611, 617, 637 S.E.2d 923, 927 (2006) (citation omitted). A custody order which is attached to the petition and states facts sufficient to warrant the determination of the existence of the asserted ground may supply the requisite factual allegations. *See In re Quevedo*, 106 N.C. App. 574, 579, 419 S.E.2d 158, 160 (1992).

As to allegation number 3 in each petition, it is averred that custody of the child was placed with DSS pursuant to an attached order entered by the court on 17 February 2014. After identifying the parents and their last known addresses in allegation numbers 4 and 5, the petition alleges: "6. The grounds to terminate the parental rights of the parents, [ ], mother, and [ ], father of this child, are that they have neglected the juvenile and continue to neglect the juvenile." As the final allegation, the petition alleges that an affidavit as to the status of the minor child is attached to the petition.

The foregoing petition is a bare bones document which is insufficient to pass muster unless the attached custody order states sufficient facts to put the parents on notice as to what acts, omissions, or conditions may be at issue. We conclude that the custody order does so. The order incorporated court summaries prepared by the social worker and guardian ad litem which summarized the history of the proceedings to that date, their observations of the progress made by the parents to comply with their respective case plans, and their recommendations as to changing the permanent plan to adoption and their reasoning. The custody order also contains findings that Mother does not have permanent housing or transportation, has not attended parenting classes as ordered by the court, did not attend domestic violence classes on a regular and consistent basis, is inconsistent with her visitations with the children, and is not providing any monetary assistance for the children. The order also

contains findings that Father is not providing monetary assistance, has no contact with DSS or the juveniles, and "his whereabouts are unknown to the mother and to the court." Because the petition to terminate parental rights contains by incorporation facts sufficient to warrant a determination that one or more of the grounds for terminating parental rights exist, we overrule this argument. *See* N.C. Gen. Stat. § 7B-1104(6) (2013) ("The petition, or motion pursuant to G.S. 7B-1102 . . . shall set forth such of the following facts as are known; and with respect to the facts which are unknown the petitioner or movant shall so state: . . . (6) Facts that are sufficient to warrant a determination that one or more of the grounds for terminating parental rights exist.").

## V

Father separately contends the court erroneously denied him his statutory right to counsel at each critical stage of the proceeding by releasing Father's attorney at the permanency planning review hearing on 25 November 2013. We disagree.

Father argues the court erred by releasing Mr. Rogerson as counsel before the permanency planning hearing without prior notice to Father. Citing *In re Dj.L.*, 184 N.C. App. 76, 84, 646 S.E.2d 134, 140 (2007), Father contends that this release violated his right to effective assistance of counsel. Father further argues that the court was required to inquire into the efforts made by counsel to contact him before allowing the attorney to withdraw. Father argues the court's error was prejudicial

because the court changed the permanent plan to adoption at the next permanency planning hearing during which he was not represented by counsel.

In support of his argument, Father cites several cases regarding the right to counsel during a proceeding to terminate parental rights, *e.g., In re D.E.G.*, ___ N.C. App. ___, ___, 747 S.E.2d 280, 284—85 (2013) (where counsel withdrew absent having appeared in court, providing notification of an intention to withdraw, or showing good cause for the request); *In re S.N.W.*, 204 N.C. App. 556, 561, 698 S.E.2d 76, 79 (2010) (contending denial of effective assistance of counsel where the trial court allowed counsel to refrain from participating in the termination of parental rights hearing); *In re Dj.L.*, 184 N.C. App. 76, 646 S.E.2d 134 (contending the termination of her parental rights was erroneous where she was denied effective assistance of counsel); *In re S.S.*, No. COA06-1538, 2007 N.C. App. LEXIS 1033 at *21–22 (N.C. App. May 15, 2007) (unpublished) (arguing he was denied a right to counsel where counsel was absent during the closing arguments of the termination of parental rights proceeding).

On the point of the due process right to representation during a proceeding to terminate parental rights, the Supreme Court of the United States has made the following observation:

> This Court's decisions have by now made plain beyond the need for multiple citation that a parent's desire for and right to the companionship, care, custody, and management of his or her children is an important interest

that undeniably warrants deference and, absent a powerful countervailing interest, protection. Here the State has sought not simply to infringe upon that interest but to end it [by termination of parental rights]. If the State prevails, it will have worked a unique kind of deprivation. A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one.

*Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N. C.*, 452 U.S. 18, 27, 68 L. Ed. 2d 640, 649 (1981) (citations and quotations omitted). Moreover, even in the context of the termination of parental rights proceeding, the Supreme Court could not say that the Constitution requires the appointment of counsel in every parental termination proceeding. *Id.* at 31, 68 L. Ed. 2d at 652. "[T]he decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings [is] to be answered in the first instance by the trial court [on a case-by-case basis], subject, of course, to appellate review." *Id.* at 32, 101 S. Ct. at 2162, 68 L. Ed. 2d at 652.

As Father has failed to provide an argument for extending the right of court appointed counsel to indigent parties as conferred by the due process clause of the Fourteenth Amendment to the United States Constitution to indigent parties in a permanency planning hearing for juveniles, we consider a statutory basis for Father's right to counsel and basis for his relief.

Here, Father's counsel was released from the duty to represent Father during a permanency planning review proceeding held subsequent to the entry of two

juvenile petitions alleging Ashley and Amelia were neglected juveniles.  Pursuant to

North Carolina General Statutes, section 7B-602,

> [i]n cases where the juvenile petition alleges that a juvenile
> is abused, neglected, or dependent, the parent has the right
> to counsel and to appointed counsel in cases of indigency
> unless that person waives the right. When a petition is filed
> alleging that a juvenile is abused, neglected, or dependent,
> the clerk shall appoint provisional counsel for each parent
> named in the petition in accordance with rules adopted by
> the Office of Indigent Defense Services and shall indicate
> the appointment on the juvenile summons or attached
> notice. At the first hearing, the court shall dismiss the
> provisional counsel if the respondent parent:
>
> > (1) Does not appear at the hearing;
> > (2) Does not qualify for court-appointed counsel;
> > (3) Has retained counsel; or
> > (4) Waives the right to counsel.
>
> The court shall confirm the appointment of counsel if
> subdivisions (1) through (4) of this subsection are not
> applicable to the respondent parent.
>
> The court may reconsider a parent's eligibility and desire
> for appointed counsel at any stage of the proceeding.

N.C. Gen. Stat. § 7B-602(a) (2013).

Pursuant to the General Rules of Practice for the Superior and District Courts

Supplemental to the Rules of Civil Procedure,

> [n]o attorney who has entered an appearance in any civil
> action shall withdraw his appearance, or have it stricken
> from the record, except on order of the court. Once a client
> has employed an attorney who has entered a formal
> appearance, the attorney may not withdraw or abandon
> the case without (1) justifiable cause, (2) reasonable notice

to the client, and (3) the permission of the court.

Gen. R. Pract. Super. And Dist. Ct. 16, 2015 Ann. R. N.C. 14; *see also Smith v. Bryant*, 264 N.C. 208, 211, 141 S.E.2d 303, 305 (1965) (After entering a formal appearance on behalf of a client, the attorney "was not at liberty to abandon her case without (1) justifiable cause, (2) reasonable notice to her, and (3) the permission of the court."). "The determination of counsel's motion to withdraw is within the discretion of the trial court, and thus we can reverse the trial court's decision only for abuse of discretion." *Benton v. Mintz*, 97 N.C. App. 583, 587, 389 S.E.2d 410, 412 (1990) (citation omitted).

Here, the court released Mr. Robertson from his representation of Father during a permanency planning review hearing. In the court's orders entered 14 November 2013, the Court found that Father failed to appear for a pretrial conference held on 24 June 2013 and the next hearing on 12 August 2013. The court found that "[Father] is not utilizing his Court appointed counsel and Christopher Robertson was relieved as Court appointed counsel of [Father]." During a hearing held on 25 November 2013, Mr. Robertson appeared and moved to be released. In its 23 January 2014 orders resulting from the hearing, the court found that "[Mr. Robertson] moved to be relieved as Court appointed counsel for [Father] because he has had no contact with . . . [F]ather and he was allowed to be relieved." Though entered after the 23 January 2014 orders, it is worth noting that in the orders entered 7 May 2014,

following a permanency planning hearing, the court found that "[Father] is having no contact with the Department of Social Services nor with the juvenile and his whereabouts are unknown to the mother and to the Court."

In accordance with section 7B-1101.1(a), "the court shall dismiss the provisional counsel if the respondent parent . . . [d]oes not appear at the hearing[.] . . . The court may reconsider a parent's eligibility and desire for appointed counsel at any stage of the proceeding." N.C.G.S. § 7B-1101.1(a). Thus, the court's consideration of Father's eligibility for court appointed representation following Father's failure to appear for the 24 June 2013 pretrial conference and the next hearing on 12 August 2013, was within the court's authority. *See id.* Furthermore, Mr. Robertson's release as Father's counsel during the permanency planning stage of the juvenile proceeding, following Mr. Robertson's motion for release on the basis that Father had no contact with Mr. Robertson does not amount to an abuse of discretion. Accordingly, we overrule this argument.

We affirm the orders terminating the parental rights of both parents to Ashley and Amelia.

AFFIRMED.

Judges McCULLOUGH and INMAN concur.

Report per Rule 30(e).